IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CV-243-D

| | | |
|---|---|---|
| SHERRY CROWDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| NORTH CAROLINA | ) | |
| ADMINISTRATIVE OFFICE OF | ) | |
| THE COURTS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On May 29, 2018, Sherry Crowder ("Crowder" or "plaintiff") filed a complaint against the North Carolina Administrative Office of the Courts ("NCAOC"), Judge N. Hunt Gwyn ("Judge Gwyn"), Judge Christopher W. Bragg ("Judge Bragg"), J.R. Rowell ("Rowell"), and the United States Equal Employment Opportunity Commission ("EEOC"; collectively, "defendants"), alleging that defendants violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") [D.E. 1]. On July 25, 2018, the EEOC moved to dismiss the complaint for lack of subject-matter jurisdiction and for failure to state a claim [D.E. 14] and filed a memorandum in support [D.E. 15]. On August 15, 2018, Crowder responded in opposition [D.E. 18]. On August 22, 2018, the EEOC replied [D.E. 20]. On July 26, 2018, NCAOC, Judge Gwyn, Judge Bragg, and Rowell moved to dismiss the complaint for lack of jurisdiction and for failure to state a claim [D.E. 16] and filed a memorandum in support [D.E. 17]. On August 16, 2018, Crowder responded in opposition [D.E. 19]. As explained below, the court grants the motions to dismiss.

I.

On January 1, 1993, Crowder became a magistrate in Judicial District 20-B. See Compl. [D.E. 1] ¶ 11. She served as a magistrate for six consecutive terms from 1993 until 2016. See id.

In 2010, Judge Bragg, who was the Chief District Court Judge of Judicial District 20-B, appointed Crowder as Chief Magistrate. See id. ¶ 12. In 2011, Judge Gwyn became the Chief District Court Judge of Judicial District 20-B and reappointed Crowder as Chief Magistrate. See id. ¶ 13. On December 31, 2016, Crowder's term as Chief Magistrate ended. See id.

On July 28, 2014, the United States Court of Appeals for the Fourth Circuit held that Virginia's marriage laws were unconstitutional to the extent that the laws "prevent[ed] same-sex couples from marrying and prohibit[ed] Virginia from recognizing same-sex couples' lawful out-of-state marriages." Bostic v. Schaefer, 760 F.3d 352, 384 (4th Cir. 2014). Federal district courts in North Carolina then applied that holding to North Carolina's marriage laws. See Fisher-Borne v. Smith, 14 F. Supp. 3d 695, 697–98 (M.D.N.C. 2014); Gen. Synod of the United Church of Christ v. Resinger, 12 F. Supp. 3d 790, 791–92 (W.D.N.C. 2014). Because North Carolina law empowers magistrates to perform marriages, on October 13 and 14, 2014, NCAOC issued guidance to magistrates concerning these decisions. See Compl. ¶¶ 16–18.

In 2014, Gayle Myrick ("Myrick") was a magistrate in Union County. See id. ¶ 19. When Myrick received NCAOC's guidance, she felt that compliance would violate her First Amendment right to free exercise of religion. See id. ¶ 20. Thus, Myrick sought an accommodation from Judge Gwyn, her supervisor, to avoid participation as a magistrate in a same-sex marriage. See id. ¶ 21. When Myrick did not receive any accommodation, she resigned. See id. ¶¶ 21–22.

Myrick then filed a charge with EEOC that alleged that the events leading to her resignation constituted religious discrimination in violation of federal law. See id. ¶ 23. The EEOC determined that the Government Employee Rights Act of 1991 ("GERA"), not Title VII, applied to Myrick and, following the procedures in GERA, appointed an Administrative Law Judge ("ALJ") to adjudicate her claim. See id. ¶ 24. After investigation, the ALJ found that Judge Gwyn, Judge Bragg, and

2

NCAOC discriminated against Myrick based on her religion, and the parties eventually resolved the matter. See id. ¶¶ 25–28.

Crowder testified as part of the ALJ's investigation into Myrick's religious discrimination claim. See id. ¶ 30. Crowder did not believe that her testimony would jeopardize her renomination to a new term as Chief Magistrate. See id. Crowder testified that, in her opinion, the Union County magistrates' office could have accommodated Myrick's request for an accommodation for at least a few months. See id. ¶ 31. Crowder alleges that the ALJ relied on Crowder's testimony to find that Judge Gwyn, Judge Bragg, and NCAOC had engaged in religious discrimination. See id.

Crowder alleges that her testimony caused Judges Gwyn and Bragg to retaliate against her by not renominating her for a new term as Chief Magistrate. See id. ¶ 33. Crowder alleges that, within a few weeks of her testimony, Judge Gwyn, Judge Bragg, and Rowell began to collect information concerning Crowder to justify their decision not to reappoint her to a new term. See id. ¶ 34. For example, on September 30, 2016, Judge Gwyn met with law enforcement officers to gather information concerning Crowder. See id. ¶ 36. Judge Gwyn, Judge Bragg, and Rowell allegedly learned of several complaints against Crowder. See id. ¶¶ 35–37. Although the alleged conduct described in the complaints predated Crowder's testimony in the Myrick investigation, defendants did not address the complaints before December 15, 2016. See id. ¶ 35.

On December 15, 2016, Judge Gwyn, Judge Bragg, and Rowell informed Crowder that Rowell would not renominate her for a new term. See id. ¶ 39. They did not explain the decision. See id. During Crowder's time as magistrate, all eligible magistrates who did not resign or retire had been renominated. See id. ¶ 40. Thus, Crowder had expected to serve a new term because she was 55-years-old and did not plan to retire. See id. ¶¶ 41, 43. A 24-year-old white woman whose mother works with Rowell replaced Crowder. See id. ¶ 42. Crowder is African-American. See id. ¶ 43.

3

On July 15, 2016, as part of the Myrick investigation, Judge Gwyn testified that Myrick, Crowder, and another magistrate came into his office and that either Myrick or the other magistrate stated that "in Union County there are some parts of those federal laws that we don't follow, quite like they do in other places." Id. ¶ 32. Judge Gwyn was surprised that magistrates under his supervision felt that way. See id. On September 7, 2016, Judge Gwyn testified that this statement caused him concern over whether the magistrates under his supervision would disregard other controversial areas of federal law, such as the Fourth Amendment's probable cause requirement for search warrants. See id. Judge Gwyn also could not remember if Crowder had chastised Myrick for not coming to her before seeking an accommodation. See id. Crowder testified that she did not say that magistrates in Union County do not always follow federal law and that she personally would follow federal law to the best of her abilities. See id. Crowder did not remember anyone making that statement during the meeting with Judge Gwyn and also did not remember scolding Myrick for not coming to her before seeking an accommodation. See id.

II.

A.

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted); see Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 453 (4th Cir. 2012); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). A federal court "must determine that it has subject-matter jurisdiction over the case before it can pass on the merits of that case." Constantine, 411 F.3d at 479–80. As the party invoking federal jurisdiction, Crowder bears the burden of establishing that this court has subject-matter jurisdiction in this action. See,

4

e.g., Steel Co., 523 U.S. at 104; Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999); Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). In considering a motion to dismiss for lack of jurisdiction, the court may consider evidence outside the pleadings. See, e.g., Evans, 166 F.3d at 647. A court should grant a motion to dismiss pursuant to Rule 12(b)(1) "only if the material jurisdictional facts are not in dispute and the moving party is entitled to judgment as a matter of law." Id. (quotation omitted).

The Declaratory Judgment Act permits a court to "declare the rights and other legal relations of any interested party seeking such declaration" when there is "a case of actual controversy within [the court's] jurisdiction." 28 U.S.C. § 2201. The Declaratory Judgment Act, however, merely creates a remedy, not jurisdiction. See Skelly Oil Co v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950); Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 592 (4th Cir. 2004); Interstate Petroleum Corp. v. Morgan, 249 F.3d 215, 221 n.7 (4th Cir. 2001) (en banc); Rose Acre Farms, Inc. v. N.C. Dep't of Env't & Nat'l Res., 131 F. Supp. 3d 496, 502 (E.D.N.C. 2015). A court has subject-matter jurisdiction over a claim for declaratory relief if "(1) the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment; (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction." Volvo Constr. Equip., 386 F.3d at 592 (quotations omitted); see 28 U.S.C. § 2201; Steffel v. Thompson, 415 U.S. 452, 458 (1974). A court has subject-matter jurisdiction over "suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question." Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal., 463 U.S. 1, 19 (1983); see Columbia Gas Transmission Corp. v. Drain, 237 F.3d 366, 370 (4th Cir. 2001). An actual controversy exists when a dispute is "definite and concrete,

5

touching the legal relations of parties having adverse legal interests." Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41 (1937).

As for Crowder's claim for declaratory relief against the EEOC, the statutes that Crowder cites do not create a cause of action against the EEOC concerning how the EEOC processes complaints. See 28 U.S.C. §§ 2201, 2202, 1331; 42 U.S.C. §§ 2000e-5(f)(3), 2000e-6(b), 2000e-16(c); see also Volz v. U.S. Equal Emp't Opportunity Comm'n, No. 3:16cv249, 2016 WL 7422655, at *3-4 (E.D. Va. Dec. 22, 2016) (unpublished). A private cause of action "does not exist" absent legislative intent to create a private cause of action. Alexander v. Sandoval, 532 U.S. 275, 286-87 (2001); see Clear Sky Car Wash LLC v. City of Cheseapeake, 743 F.3d 438, 443-44 (4th Cir. 2014). Thus, Title VII does not create an implied or express cause of action for EEOC claimants concerning how the EEOC processes charges. See Georator Corp. v. Equal Emp't Opportunity Comm'n, 592 F.2d 765, 768 (4th Cir. 1979); Volz, 2016 WL 7422655, at *3-4. Therefore, Crowder's claim against the EEOC does not raise a federal question under 28 U.S.C. § 1331. Cf. Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808, 817 (1986).

The other statutes that Crowder cites do not confer subject-matter jurisdiction over Crowder's claim for declaratory relief against the EEOC. Absent an independent jurisdictional basis, the remedy created by the Declaratory Judgment Act is not available to Crowder. See Volvo Constr. Equip., 386 F.3d at 592. Accordingly, the court lacks subject-matter jurisdiction over Crowder's claim for a declaratory judgment against the EEOC. The court grants the EEOC's motion to dismiss and dismisses Crowder's complaint against the EEOC without prejudice.

B.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677-80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554-

6

63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[] [her] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

Title VII broadly defines an employee as "an individual employed by an employer." 42 U.S.C. § 2000e(f). But Title VII excludes from that definition any "appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office." Id. The parties agree that Crowder was "an appointee on the policy making level." See [D.E. 17] 5–7; [D.E. 19] 2–6. If so, GERA, not Title VII, controls Crowder's claim. See 42 U.S.C. § 2000e-16(c); Crain v. Butler, 419 F. Supp. 2d 785, 788 (E.D.N.C. 2005).

"The Fourth Circuit has not interpreted [Title VII's] exemption for appointees on the policy making level." Chism v. N.C. Gen. Assembly, No. 5:15-CV-348-FL, 2016 WL 3920211, at *2 (E.D.N.C. July 15, 2016) (unpublished). The Fourth Circuit has, however, considered analogous contexts. In analyzing Title VII's personal staff exclusion, the Fourth Circuit has held that federal

7

law controls and that state law is relevant only to define the characteristics of a plaintiff's employment. See United States v. Gregory, 818 F.2d 1114, 1116 (4th Cir. 1987); Curl v. Reavis, 740 F.2d 1323, 1327–28 (4th Cir. 1984). Moreover, the Age Discrimination in Employment Act's ("ADEA") exclusion for appointees on the policy-making level applies if "the appointee is in a position requiring the exercise of discretion concerning issues of public importance," even if the appointee does not in fact make policy. Gregory v. Ashcroft, 501 U.S. 452, 466–67 (1991); see 29 U.S.C. § 630(f).[1]

North Carolina magistrates exercise discretion concerning issues of public importance. See, e.g., N.C. Const. art. IV, § 10; N.C. Gen. Stat. §§ 7A-170, 7A-171, 7A-211, 7A-273, 7A-292; Bradshaw v. Admin. Office of the Courts, 320 N.C. 132, 134, 357 S.E.2d 370, 371 (1987). Although courts construe Title VII's policy making exclusion narrowly, North Carolina magistrates "resolv[e] disputes and recommend[] dispositions" to judges in discretionary areas of public importance, including the issuance of search and arrest warrants. Birch v. Cuyahoga Cty. Prob. Court, 392 F.3d 151, 159–61 (6th Cir. 2004); see Crumpacker v. Kan. Dep't of Human Res., 474 F.3d 747, 752–55 (10th Cir. 2007); Butler v. N.Y. State Dep't of Law, 211 F.3d 739, 746–49 (2d Cir. 2000); Nowlin v. Lake City, No. 4:10-1857-JMC, 2012 WL 831492, at *4–5 (D.S.C. Mar. 12, 2012) (unpublished); Battle v. Haywood Cty. Bd. of Educ., No. 10-1024, 2011 WL 4833113, at *16–19 (W.D. Tenn. Oct. 12, 2011) (unpublished); Spann-Wilder v. City of N. Charleston, No. 2:08-156-MBS, 2010 WL 3222235, at *5–7 (D.S.C. Aug. 13, 2010) (unpublished); cf. EEOC v. N. Carolina, No. C-C-78-258, 1979 WL 42, at *1–3 (W.D.N.C. Oct. 15, 1979) (unpublished), vacated, 626 F.2d 860 (4th Cir.

---

[1] Because "the operative language in [the] ADEA is identical to the operative language in Title VII," the "analysis utilized under either act is interchangeable." Haavistola v. Cmty. Fire Co. of Rising Sun, Inc., 6 F.3d 211, 219 n.2 (4th Cir. 1993).

8

1980) (unpublished table decision). Accordingly, North Carolina magistrates are appointees on the policy making level, and Title VII does not apply to them. Rather, GERA applies to them. GERA requires that magistrates seek administrative relief with the EEOC and appeal to the United States Courts of Appeals after the EEOC issues a final order. See Brazoria Cty. v. Equal Emp't Opportunity Comm'n, 391 F.3d 685, 689–91 (5th Cir. 2004); Chism, 2016 WL 3920211, at *4; Crain, 419 F. Supp. 2d at 788. Because Crowder is "an appointee on the policy making level," Crowder fails to state a claim under Title VII against the defendants, and the court grants defendants' motion to dismiss Crowder's complaint for failure to state a claim upon which relief can be granted. Cf. Arbaugh v. Y&H Corp., 546 U.S. 500, 504, 510–16 (2006) (discussing difference between dismissal due to lack of subject-matter jurisdiction versus dismissal for failure to state a claim). The court dismisses Crowder's complaint without prejudice.

C.

Crowder notes that the EEOC's determination that Title VII, not GERA, applied to her claim forced her to seek relief in this court to comply with Title VII's 90-day requirement for filing suit. See [D.E. 18] 1–3. GERA requires that individuals file a complaint with the EEOC within 180 days of an alleged violation. See 42 U.S.C. § 2000e-16c(b)(1); 29 C.F.R. § 1603.102(a). The EEOC then should determine whether a violation has occurred and set forth its determination in a final order. See 29 C.F.R. § 1603.217. "Any party aggrieved by a final order . . . may obtain a review of such order under chapter 158 of Title 28." 42 U.S.C. § 2000e-16c(c); see 29 C.F.R. § 1603.306. Jurisdiction for such review lies in the United States Courts of Appeals. See 29 C.F.R. § 1603.306.

Crowder complied with her obligations under GERA. If the EEOC had issued a final order under 29 C.F.R. § 1603.306, Crowder could have appealed that order to the United States Court of Appeals for the Fourth Circuit. See 42 U.S.C. § 2000e-16c(c); 29 C.F.R. § 1603.306. However,

9

because the EEOC issued a right-to-sue letter, Crowder's only recourse was to file suit in this court within 90 days. See Compl. [D.E. 1] ¶ 48. Crowder timely did so to preserve her rights.

In similar circumstances, courts have applied equitable tolling. See, e.g., Coleman v. Talbot Cty. Det. Ctr., 242 F. App'x 72, 73–74 (4th Cir. 2007) (per curiam) (unpublished); Brown v. Crowe, 963 F.2d 895, 899–900 (6th Cir. 1992); DePriest v. Milligan, No. 4:12-CV-235 KGB, 2013 WL 5507690, at *6 (E.D. Ark. Sept. 30, 2013) (unpublished); cf. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113–14 (2002); Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 392–93 (1982). Notably, the EEOC's regulations under GERA permit equitable tolling of all deadlines, including the 180-day requirement to file a charge with the EEOC. See 29 C.F.R. § 1603.106(c). This court trusts that the EEOC will follow its regulations and apply equitable tolling of GERA's 180-day requirement so that Crowder can pursue relief under GERA upon filing a new charge with the EEOC. Whether Crowder will prevail under GERA is an issue for another day. Crowder should, however, be able to pursue her GERA claim at the EEOC and (if necessary) in the Fourth Circuit.

III.

In sum, GERA applies to Crowder. Thus, the court GRANTS defendants' motions to dismiss [D.E. 14, 16] and DISMISSES Crowder's complaint without prejudice. The clerk shall close the case.

SO ORDERED. This 19 day of March 2019.

JAMES C. DEVER III
United States District Judge

10